**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOOGLE LLC,<br><br>   *Plaintiff,*<br><br> v.<br><br>DOE 1 a/k/a YUCHENG CHANG and DOES 2–25,<br><br>   *Defendants.* | Civil Action No.: |

**DECLARATION OF LAURA HARRIS IN SUPPORT OF PLAINTIFF'S MOTION FOR AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

I, Laura Harris, hereby declare and state as follows:

1. I am a partner with the law firm of King & Spalding LLP and counsel of record for Plaintiff Google LLC ("Google"). I make this declaration in support of Google's Motion for an *Ex Parte* Temporary Restraining Order and Order to Show Cause ("TRO Motion"). I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. This Court may issue a temporary restraining order without notice to Defendants if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). I submit this declaration because Google has not provided Defendants with notice of the filing of this action or Google's TRO Motion for the reasons provided below. I certify that the necessity for this emergency hearing arises from the circumstances of this case and not from a lack of diligence on Google's part.

**I.    Basis For *Ex Parte* TRO Motion**

3. Google seeks an *ex parte* temporary restraining order so that it may disrupt Defendants' operation of a global criminal enterprise (the "Darcula Enterprise" or "Enterprise") that engages in phishing attacks to steal personal and financial information for use in perpetrating cybercrimes, including selling compromised financial information to other cybercriminals.

4. As described in Google's TRO Motion, Memorandum of Law in Support of Its Motion for an *Ex Parte* Temporary Restraining Order and Order to Show Cause ("Memorandum of Law"), and supporting documents, the Darcula Enterprise has developed a software called "Magic Cat" that the Enterprise leverages to create and deploy large-scale phishing attacks. It includes templates for fake websites, domain set-up tools for those fake websites, and features designed to evade detection and lead victims to believe they are dealing with legitimate products.

2

Declaration of ▓▓▓▓▓▓▓▓ in Support of Plaintiff's Motion for an *Ex Parte* Temporary Restraining Order and Order to Show Cause ("Naxo Declaration") ¶¶ 20–26, 42–67.

5. The Darcula Enterprise continues to create fraudulent websites daily that bear Google's trademarks and are causing irreparable harm to Google, its users, and the public. For example:

   a. The Enterprise uses the Magic Cat software to create fake websites that resemble, for example, toll collection websites, that it uses to collect victims' financial and personal information. *Id.* ¶ 67. Those sites often use Google logos and trademarks to mimic legitimate sites. *Id.* ¶¶ 67, 80. Fooled by this resemblance, victims will then enter their personal financial information, like a credit card or bank account information.

   b. The Darcula Enterprise collects and stores victims' information through the Magic Cat software. *Id.* ¶¶ 6, 17. The Enterprise members can then either exploit that information themselves, sell that information to other cybercriminals, or both. *Id.* ¶ 19.

6. Certain domains associated with web registrars have been identified as phishing websites created with the Magic Cat software. Those domains are set forth in **Appendix A** to the Naxo Declaration.

7. To disrupt the Darcula Enterprise and its phishing schemes, Google seeks to shut down domains created using the Magic Cat software. To suspend the infrastructure on which the Enterprise relies, Google must act quickly and coordinate with multiple domain registrars.

8. It is critical to implement this plan without notice to Defendants because, with notice, Defendants could destroy evidence of their activities and move their infrastructure to new domains to continue new versions of the schemes and frustrate efforts to disrupt them.

9. I have been informed that Google employees investigating Darcula, including Google's CyberCrime Investigation Group ("CCIG"), have attempted to identify the true identities of all responsible Defendants but have been unable to do so. Based on my experience on prior similar matters and on Google's research, Defendants may have provided contact information to web hosting companies during the domain-name registration process, which could potentially include mailing addresses, email addresses, facsimile numbers, and telephone numbers that could identify additional defendants.

10. In my experience, Defendants provide fake mailing addresses to registrars and web-hosting companies. Defendants are more likely to provide real email addresses so that they receive any notifications regarding service disruptions and to ensure they receive communications regarding registration expiration or other issues tied to the continued function of their domains.

11. Google has not attempted to provide notice of the TRO Motion to Defendants and should not be required to provide notice at this time.

12. As discussed more fully in Google's accompanying TRO Motion and Memorandum of Law, Google is likely to prevail on the merits of this case. Defendants are operating a worldwide criminal enterprise using the Magic Cat software; they are using technology that can be easily concealed and destroyed; and they have inflicted and are continuing to inflict harm on individuals and Google in the process. Without immediate, *ex parte* injunctive relief, Defendants will likely be able to evade any court-ordered efforts to disrupt the Darcula Enterprise by destroying business records, modifying the Magic Cat software, and otherwise concealing

evidence of the Enterprise's malicious and criminal activity. For these reasons, there is good cause for this Court to grant the requested relief without providing advance notice to Defendants.

## II. Notice and Service of Process to Defendants

13. On behalf of Google, once the disruption plan reflected in the proposed TRO has been substantially completed, King & Spalding plans to attempt to provide notice of the pleadings, TRO Motion and supporting papers, and any TRO or preliminary injunction hearing to Defendants in the following ways: (A) by serving notice to email addresses associated with Defendants to the extent any email address information is available from web-hosting companies provided in connection with domain names used in the Darcula Enterprise's schemes or any email addresses identified through Google's investigation; and (B) by serving notice via website publication.

14. Defendants are believed to reside in China. Though China is a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents, U.S. Dep't of State, *China Judicial Assistance Information*, https://tinyurl.com/dutau8dc (last visited Dec. 16, 2025), "[t]he Hague Convention is not the exclusive means for obtaining discovery from a foreign entity. Nor is the Convention necessarily the means of first resort," *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998) (internal citations omitted). And, in any event, Federal Rule of Civil Procedure 4(f) does not require service through the Hague Convention. *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) ("[T]he rule does not require a party to serve process by the means specified in subsections 4(f)(l) and (f)(2) before a court permits alternative service by 'other means' under Rule 4(f)(3).").

### A. Service to Email Addresses Associated with Defendants

15. King & Spalding will attempt to provide notice of any TRO and preliminary injunction hearing to Defendants on Google's behalf. King & Spalding will also attempt to serve

the Complaint to Defendants by sending the pleadings to email addresses associated with Defendants, provided by Defendants to the internet domain registrars, or relevant email addresses otherwise revealed by Google's investigation.

B. **Service by Website Publication**

16. King & Spalding will also attempt to provide notice of the pleadings, along with any TRO or preliminary injunction hearing, by publishing those materials on a publicly accessible website. King & Spalding will publish such notice on the website for a period of six months.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 17, 2025, in New York, New York.

 /s/ Laura Harris
Laura Harris