## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GOOGLE LLC,

         *Plaintiff,*

     v.

DOE 1 a/k/a YUCHENG CHANG and DOES 2–25,

         *Defendants.*

Civil Action No.: 25-cv-10440 (JSR)

## GOOGLE'S SUPPLEMENTAL MEMORANDUM OF LAW
## <u>IN RESPONSE TO JANUARY 9, 2026 HEARING</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A. Google Sues an Elusive Band of Cybercriminals ................................................ 2

    B. Google Investigates the Legitimacy of the Cybercriminals' Purported Addresses ........ 4

    C. The Second Circuit's Decision in *Smart Study Co. v.*
    *Shenzhenshixindajixieyouxiangongsi* ................................................................. 5

ARGUMENT ..................................................................................................................... 7

I.    The Hague Convention does not apply here. ....................................................... 7

II.   Article 15(3) of the Hague Convention permits alternative service for provisional
      relief under urgent circumstances. ..................................................................... 12

III.  Email and website publication are appropriate methods of service here. ............ 14

CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page(s)**

*ABC v. DEF*,
   2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) ...............................................................7, 13

*Kelly Toys Holdings, LLC v. Top Dep't Store*,
   2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022).............................................................8, 9, 10

*King Spider LLC v. 884886 CH Store*,
   2024 WL 5145837 (S.D.N.Y. Dec. 17, 2024) .......................................................................12

*Kumar v. Alhunaif*,
   2023 WL 8527671 (S.D.N.Y. Dec. 8, 2023) ...........................................................................8

*Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, and*
   *Unincorporated Associations Identified on Sched. A to Compl.*,
   2023 WL 2330429 (S.D.N.Y. Mar. 2, 2023)............................................................................8

*Lonati, S.p.A. v. Soxnet, Inc.*,
   2021 WL 9839476 (C.D. Cal. Sept. 20, 2021) ......................................................................13

*Microsoft Corp. v. Does 1-2*,
   2021 WL 4755518 (E.D.N.Y. May 28, 2021) ..........................................................................9

*Microsoft Corp. v. Does 1-2*,
   2021 WL 4260665 (E.D.N.Y. May 28, 2021) ........................................................................10

*Microsoft Corp. v. Does*,
   2012 WL 5497946 (E.D.N.Y. Nov. 13, 2012)..........................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...............................................................................................................14

*Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co.*,
   2025 WL 2381588 (S.D.N.Y. Aug. 13, 2025)........................................................................13

*Philip Morris USA Inc. v. Veles Ltd.*,
   2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ..........................................................................10

*Prediction Co. LLC v. Rajgarhia*,
   2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ..........................................................................8

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
   -- F.4th --, 2025 WL 3672740 (2d Cir. Dec. 18, 2025) ................................................. *passim*

**Statutes/Rules**

Fed. R. Civ. P. 4, 4(f)(2) ..............................................................................................13, 14

Fed. R. Civ. P. 4(f)(3) ...................................................................................... *passim*

**Treaty Provisions**

Hague Service Convention art. 15, 15(1), 15(3)............................................1, 12, 13, 14

Hague Service Convention art. 1 ....................................................................................7

**Other Authorities**

U.S. State Dep't, *China (Includes Hong Kong, Macau, and Tibet): Hong Kong*,
    https://tinyurl.com/yjs5jvbj (last visited Jan. 22, 2026)..........................................10

U.S. State Dep't, Judicial Assistance Country Information, China,
    https://tinyurl.com/4v4v663w (last visited Jan. 22, 2026)......................................10

U.S. State Dep't, Judicial Assistance Country Information, Hong Kong,
    https://tinyurl.com/expmznba (last visited Jan. 22, 2026) ......................................10

Provisional, *Black's Law Dictionary* (12th ed. 2024)..................................................13

Remedy, *Black's Law Dictionary* (12th ed. 2024) ......................................................13

## INTRODUCTION

Plaintiff Google LLC submits this memorandum of law in response to the Court's request during the January 9, 2026 hearing to address the implications of *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, -- F.4th --, 2025 WL 3672740 (2d Cir. Dec. 18, 2025). *Smart Study* does not prevent this Court from ordering alternative service, through email or website publication, especially for the provisional relief Google seeks here.

As an initial matter, as the Second Circuit recognized in *Smart Study*, the Hague Convention does not apply where a defendant's address is unknown despite the plaintiff's reasonable diligence. *See id.* at *2. Here, Google has exercised extraordinary diligence to uncover the relevant addresses, including conducting its own investigation into Defendants' identities, hiring an outside investigation firm to do the same, obtaining a court order requesting Defendants' addresses from third parties, and retaining counsel based in China to investigate those addresses. Despite those efforts, as explained in more detail below, all of the Defendants' addresses remain unknown. Google is therefore not required to serve the Defendants in accordance with the Hague Convention.

Moreover, even if Hague Convention service were necessary here, Article 15(3) permits alternative service for "provisional" relief under "urgent" circumstances. Here, Google is seeking a preliminary injunction—quintessential provisional relief—to stop an ongoing criminal scheme that has defrauded millions of victims. Article 15(3) therefore authorizes this Court to order alternative service.

Under Rule 4(f)(3), which authorizes service by "other means not prohibited by international agreement," service through email and website publication are appropriate alternative methods of service here because the Defendants are cybercriminals who actively obscure their

identities. These methods are reasonably calculated to apprise the Defendants of this action, and likely the most reliable means of doing so.

## BACKGROUND

### A.    Google Sues an Elusive Band of Cybercriminals

On December 17, 2025, Google sued Defendants Doe 1 a/k/a Yucheng Chang and Does 2–25, cybercriminals and co-conspirators who are members of the well-known "Darcula" phishing ring (the "Darcula Enterprise"). ECF No. 1, Complaint ("Compl.") ¶¶ 1–9. While seeking to conceal their identities and locations, the members of the Enterprise defraud victims on a massive scale using a set of software tools known as "Magic Cat." Compl. ¶¶ 14–17; ECF No. 10, ("Google Decl.") ¶¶ 15–22, 28; ECF No. 9, ("Naxo Decl.") ¶¶ 16–21. Some of the Enterprise's well-known schemes include text phishing scams mimicking messages from legitimate businesses and government entities.

Before filing suit, Google engaged NAXO Labs LLC ("Naxo"), a company that conducts blockchain and cyber investigations, to conduct a months-long investigation, which included attempts to ascertain the identities of the phishing operation's elusive ringleaders. *See* Naxo Decl. ¶¶ 2, 6–7; Declaration of Laura Harris ("Harris Decl.") ¶ 4.[1] Google's own CyberCrime Investigation Group also conducted extensive research into the Enterprise. Google Decl. ¶¶ 42–43; Harris Decl. ¶ 3. Google learned that members of the Enterprise license the software and coordinate with each other using dedicated Telegram channels and other electronic communications. Compl. ¶¶ 47–61; Naxo Decl. ¶¶ 18, 20; Harris Decl. ¶ 3. They conceal their identities through usernames like "@x667788x," Compl. ¶ 66, and "@pk520520," Naxo Decl. ¶ 6.

---

[1] In this submission, "Harris Declaration" refers to a contemporaneously-filed declaration of Ms. Harris, and not the previously-filed Harris Declaration at ECF No. 11.

These investigations led Google to believe that the Defendants are likely based in China or other foreign countries. Compl. ¶¶ 14–15; Google Decl. ¶ 28; Naxo Decl. ¶ 21; Harris Decl. ¶ 6.

While the members of the Enterprise remain unknown even after Google's extensive investigation, researchers have identified one alias associated with the Darcula Enterprise—"Yucheng Chang." Compl. ¶ 14. Chang was identified through extensive reporting by a Norwegian news organization, NRK. *See id.* ¶ 14 n.23. Google's own investigation has neither confirmed that "Yucheng Chang" is a real name nor revealed any additional identifying information about that individual. Harris Decl. ¶ 7; Google Decl. ¶ 28. Nor has Google identified a physical address associated with "Yucheng Chang." Harris Decl. ¶ 7.

At the same time that Google filed the complaint, Google moved for a TRO, asking the Court to issue an order that would enable Google to take down the domains that the Enterprise has used to spoof legitimate websites in its phishing schemes. ECF Nos. 7, 8. To that end, Google provided the Court with a list of 392 domains associated with the Enterprise, Appendix A, and moved the Court issue an order requesting that 15 registrars turn over mailing addresses, email addresses, and other contact information associated with those domains, ECF No. 12 ¶ 48; Harris Decl. ¶ 10. Google also asked this Court to permit alternative service—by website publication and email—for the Defendants under Federal Rule of Civil Procedure 4(f)(3), explaining that these were likely to be the "most accurate and viable means of notice and service for these foreign cybercriminal Defendants." ECF No. 8 at 24.

On December 17, this Court granted the TRO and ordered that the registrars "take their best efforts" to "produce to Google" the mailing addresses, email addresses, and other contact information associated with the domains. ECF No. 18 ¶ 48. The Court also found good cause for

alternative service, permitting Google to serve the Defendants through email and website publication. *Id.* ¶ 17.

Google then sent that Order to the registrars identified in Appendix A and requested that those third parties provide contact information associated with the domains identified in Appendix A. ECF No. 22 ¶ 2. On January 4, after only six registrars returned email addresses for the domains, Google served the Defendants by email and published a website with the service documents. *Id.* ¶ 3; Harris Decl. ¶ 11. Seven of the registrars refused to provide contact information, declining under the laws of China, Singapore, or Iceland. Harris Decl. ¶ 11.

**B.    Google Investigates the Legitimacy of the Cybercriminals' Purported Addresses**

In response to the Court's Order the registrars also turned over 27 physical addresses associated with the domains. Harris Decl. ¶ 12. After receiving those addresses, Google investigated whether these addresses were legitimate, including by seeking counsel based in China to examine these addresses and by attempting to mail physical service to those addresses through FedEx. Harris Decl. ¶¶ 12–14, 18. Google's counsel also spent significant time attempting to ascertain the legitimacy of these addresses through Internet searches. Harris Decl. ¶¶ 12–14. Google's investigation uncovered that these addresses are either altogether fake or almost certainly not Defendants' actual addresses. Harris Decl. ¶¶ 12–14.

Two of the addresses do not indicate a country. Harris Decl. ¶ 16. And only eight addresses are located in China (specifically, Beijing or Hong Kong). Harris Decl. ¶ 17. The remaining 17 addresses are either in the United States or other foreign countries—Australia, Chile, Ecuador, Greece, Japan, New Zealand, and Taiwan. Harris Decl. ¶¶ 19–26.

All of the Beijing and Hong Kong addresses are nonsensical. Harris Decl. ¶ 17. Most of them include gibberish. Declaration of Rongwei Cai ("Cai Declaration") ¶ 6. Though some appear

to be English renderings of Chinese characters, they do not correspond to actual locations. Cai Decl. ¶¶ 6, 8–9. One address even has Spanish words included in it. Cai Decl. ¶ 6. Another address, linked to a Hong Kong phone number with the street name "Hougang Avenue," lists only Kauno as its location. Declaration of Lam Sze Wing ("Lam Decl.") ¶ 17. Google attempted to create FedEx labels for each of these addresses, but FedEx does not recognize any of these locations. Harris Decl. ¶ 17. Google's counsel based in China has confirmed that these addresses are not real. Cai Decl. ¶¶ 6, 9; Lam Decl. ¶ 18.

The addresses purportedly located in other countries suffer similar problems. FedEx does not recognize multiple addresses. Harris Decl. ¶¶ 19, 22, 25. Indeed, there are only two addresses in New Zealand that correspond to verifiably real locations. Harris Decl. ¶ 24. Neither appears to correspond to Defendants' actual addresses. Harris Decl. ¶ 24. One New Zealand address corresponds to an office building and the other corresponds to a New Zealand-based telecommunications company called Devoli. Harris Decl. ¶ 24. Three additional addresses—in Chile, Japan, and Ecuador—are inexact or incorrect. Harris Decl. ¶¶ 20, 21, 23. The Chile address misspells the city and lists a non-existent street name. Harris Decl. ¶ 20. The address in Japan does not appear to correspond to an actual location through an internet search. Harris Decl. ¶ 23. Google Maps does not recognize the address in Ecuador—instead, Google Maps returns an address with a different street number, street name, and zip code when searched. Harris Decl. ¶ 21.

## C.    The    Second    Circuit's    Decision    in    *Smart    Study    Co.    v.    Shenzhenshixindajixieyouxiangongsi*

On January 8, Google filed a proposed order for a preliminary injunction, seeking to convert its TRO into a preliminary injunction. ECF No. 21. On January 9, this Court held a hearing on the request for a preliminary injunction. The Court noted the Second Circuit's recent decision in *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, -- F.4th --, 2025 WL 3672740 (2d Cir.

Dec. 18, 2025), which was issued the day after this Court granted the TRO. The Court requested that Google submit a brief explaining what implications, if any, *Smart Study* has for this case. ECF No. 25, Hearing Tr. 3, 6.

In *Smart Study*, the plaintiff was the entertainment company that created the song "Baby Shark," which became a global sensation. *SmartStudy*, 2025 WL 3672740, at *3. Following Baby Shark's success, the plaintiff obtained trademarks for Baby Shark content and produced a wide variety of Baby Shark products. *Id.*

In July 2021, the plaintiff filed a sealed complaint in the Southern District of New York against 58 companies based in China, alleging that the companies had counterfeited the plaintiff's Baby Shark products, violating trademark, copyright, and unfair-competition laws. *Id.* The plaintiff sought an *ex parte* TRO, which the court granted. *Id.* The court also permitted the plaintiff to serve the defendants by email under Federal Rule of Civil Procedure 4(f)(3). *Id.* When the defendants failed to appear, the district court entered a preliminary injunction. *Id.* Months later, two defendants appeared and moved to dissolve that injunction, arguing that the district court did not have personal jurisdiction because the Hague Convention did not allow email service on China-based defendants. *Id.* The plaintiff voluntarily dismissed those defendants and then moved for a default judgment. *Id.*

After the district court made clear that it believed the Hague Convention barred email service for the China-based defendants, the plaintiff filed a renewed motion for partial default judgment, arguing that "the Convention did not apply to forty-nine of the remaining defendants because [the plaintiff] had been unable to obtain their physical addresses despite exercising reasonable diligence." *Id.* The district court granted that motion as to the 49 defendants, "permanently enjoin[ing] the defendants from manufacturing, selling, or otherwise dealing in

counterfeit Baby Shark products." *Id.* at \*4. Two defendants remained after the partial default judgment—"Shenzhenshixindajixieyouxiangongsi" and "Changgesshangmaoyouxiangongsi." *Id.* The plaintiff maintained that the Hague Convention allowed email service as to those defendants, but the district court disagreed, dismissing the plaintiff's claims against those two defendants for improper service. *Id.* Critically, the plaintiff did not dispute that the Hague Convention applied as to these two defendants. *Id.* ("Smart Study assumes for purposes of this appeal that the Hague Service Convention governs service over Defendants-Appellees.").

On appeal, the Second Circuit affirmed the district court's holding that the Hague Convention barred email service on the two-China based defendants. *Id.* at \*6. In reaching its conclusion, the court noted that China has objected to provisions of the Hague Convention permitting service through "postal channels." *Id.* at \*4. The Second Circuit acknowledged that, as set forth in Article 1 of the Convention, the Convention does not apply when the defendant's address is unknown, *id.* at \*2. Because the plaintiff did not seek to invoke that exception, however, the Second Circuit had no occasion to consider it. The panel also did not address service in other countries subject to the Hague Convention or service in other countries that are not signatories to the Hague Convention.

## ARGUMENT

### I.    The Hague Convention does not apply here.

Article 1 of the Hague Convention states, in no uncertain terms, that the Convention "shall not apply where the address of the person to be served with the document is not known." Courts have interpreted this provision to mean that the Convention does not apply where defendants' addresses are unknown despite "reasonable diligence." *ABC v. DEF*, 2024 WL 5168624, at \*1 (S.D.N.Y. Dec. 13, 2024) ("An address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful

in doing so.") (quoting *Kelly Toys Holdings, LLC v. Top Dep't Store*, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022)).

In *Smart Study*, the Second Circuit considered whether a plaintiff could serve two China-based defendants by email under the Hague Convention. *Id.* at *4. While the court concluded that the Hague Convention does not permit email service on those defendants, it also reiterated that "the Convention does not apply" where "the address of the person to be served remains unknown." *Id.* at *2. Accordingly, it left undisturbed the district court's partial default judgment against "forty-nine of the … defendants" where "Smart Study had been unable to obtain their physical addresses despite exercising reasonable diligence." *Id.* at *3. Critically, in *Smart Study*, the plaintiffs did not dispute that the Hague Convention applied to the two remaining China-based defendants. *Id.* at *4 ("Smart Study assumes for purposes of this appeal that the Hague Service Convention governs service over Defendants-Appellees."). And "local counsel in Beijing ha[d] 'conclude[d] that the physical addresses listed … may be accurate.'" *Id.* at *5.

Courts in this circuit have found "reasonable diligence" where the plaintiff has attempted to obtain the defendant's address in multiple ways, including through extensive investigation and seeking contact information from domain registrars. *See, e.g.*, *Kumar v. Alhunaif*, 2023 WL 8527671, at *3 (S.D.N.Y. Dec. 8, 2023) ("While 'reasonable diligence' is a fact-specific inquiry, '[c]ourts in this District have consistently held that multiple modes of attempted contact typically are required.'") (quoting *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, and Unincorporated Associations Identified on Sched. A to Compl.*, 2023 WL 2330429, at *3 (S.D.N.Y. Mar. 2, 2023)); *see also id.* ("Courts have found plaintiffs to have exercised reasonable diligence where plaintiff 'attempted to obtain [the defendant's] address in a variety of ways.'") (quoting *Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y.

8

Mar. 22, 2010)); *Microsoft Corp. v. Does*, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (finding reasonable diligence where plaintiff sought contact information from domain registrars); *Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *7 (S.D.N.Y. Aug. 26, 2022) (collecting cases). And where, despite "months of investigation," a plaintiff has "only been able to ascertain that [d]efendants most likely reside" *somewhere* in a country because defendants "operate via the Internet, using usernames, and understandably, do not wish to be identified or located" and "use[] sophisticated means to conceal their identities and locations," the reasonable diligence standard has been met. *See e.g.*, *Microsoft Corp.*, 2012 WL 5497946, at *2.

Here, Google does not know the Defendants' addresses despite reasonable diligence. Google has pursued "multiple modes" of attempting to learn those addresses, including through its own investigation, seeking a court order to obtain those addresses, and working with counsel in China to investigate addresses. Google pursued an extensive investigation into the Defendants, hiring a premier cyber investigation firm and conducting its own thorough exploration of the phishing enterprise. Naxo Decl. ¶¶ 2, 6; Google Decl. ¶¶ 42–43. Those efforts uncovered multiple usernames associated with the Enterprise but, not surprisingly given the lengths to which sophisticated cybercriminals go to cover their tracks, Google remains unable to connect those usernames to true identities or legitimate addresses. And while it was able to identify an alias associated with an Enterprise member—"Yucheng Chang"—Google has not determined conclusively whether "Yucheng Chang" is a real name. Nor has it identified a physical address for that individual or individuals. Harris Decl. ¶ 7 (citing Google Decl. ¶ 28).

Google also sought—and received—an order requesting the physical addresses associated with the Defendants from registrars. ECF No. 18 ¶ 48; *see Microsoft Corp. v. Does 1-2*, 2021 WL 4755518, at *3 (E.D.N.Y. May 28, 2021) (finding reasonable diligence where plaintiffs conducted

an "extensive investigation and [sought] subpoenas to the relevant domain registrars and email providers"), *R&R adopted*, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021). As of this filing, Google has received 27 addresses from registrars. Harris Decl. ¶ 12. Google has analyzed each of those addresses to determine whether they are legitimate. Harris Decl. ¶¶ 12–14. Only eight of the addresses purport to be in Beijing or Hong Kong,[2] but each of those is either composed of gibberish or devoid of the information necessary to make it legitimate. Harris Decl. ¶ 17; Cai Decl. ¶ 6; Lam Decl. ¶¶ 5, 17. For example, one address is listed as "HK Hong Kong jiu long cheng qu eweweg rrerg erre wtet yerwe wtttw 1985 455 hao." Lam Decl. Attachment A, Address # 6. Another purportedly Chinese address appears to include both English and Spanish words: "CN Beijing zhao yang Diagonal 36A, Las Luisas, Zapote, San Jos." Cai Decl. ¶ 6. Google's China-based counsel has reviewed the eight addresses and has confirmed that they are fake. Cai Decl. ¶ 9; Lam Decl. ¶ 18; *see Kelly Toys Holdings, LLC.*, 2022 WL 3701216, at *7 (finding reasonable diligence where "counsel took the additional step of tasking counsel from its Beijing office to try to find that address").

Google has also attempted to mail service to the Hong Kong and China addresses, but FedEx could not create a label with the information provided. Harris Decl. ¶ 17; *see Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *1 n.2, 3 (S.D.N.Y. Mar. 12, 2007) (finding reasonable diligence where plaintiff attempted to send mail to addresses but it was returned).

---

[2] Although Hong Kong is presently a "Special Administrative Region" of China, *see* U.S. State Dep't, *China (Includes Hong Kong, Macau, and Tibet): Hong Kong*, https://tinyurl.com/yjs5jvbj (last visited Jan. 22, 2026), it separately ratified the Hague Convention and has independent requirements to effect service of process. *Compare* U.S. State Dep't, Judicial Assistance Country Information, Hong Kong, https://tinyurl.com/expmznba (last visited Jan. 22, 2026), *with* U.S. State Dep't, Judicial Assistance Country Information, China, https://tinyurl.com/4v4v663w (last visited Jan. 22, 2026).

The registrars also provided 17 addresses associated with locations outside of China—in Australia, Chile, Ecuador, Greece, Japan, New Zealand, Taiwan, and the United States. Harris Decl. ¶¶ 19–26. Of those foreign countries, only Japan, Australia and Greece are parties to the Hague Convention. Hague Conference on Private International Law, Status Table, ttps://tinyurl.com/36r8u479 (last visited Jan. 22, 2026). The two addresses linked to Australia and Greece are fake because they are gibberish, and like the China addresses, FedEx was unable to make a label for them. Harris Decl. ¶¶ 19, 22. The address in Japan appears to reference a region there but does not correspond to a real or exact location. Harris Decl. ¶ 23.

The remaining addresses appear to be located in countries that are not parties to the Hague Convention. Thus, the propriety of email service to these locations is not implicated by *Smart Study*. Regardless, none is legitimate and associated with Defendants. The address in Taiwan is gibberish. Harris Decl. ¶ 25. The address in Ecuador is also fake—Google Maps does not recognize it as valid. Harris Decl. ¶ 21. Instead, Google Maps returns an address with a different street number, street name, and zip code when searched. Harris Decl. ¶ 21. The address in Chile misspells the city in which it is purportedly located and does not provide a real street name. Harris Decl. ¶ 20. And although the two addresses located in New Zealand appear to be legitimate, they do not appear to be associated with Defendants—they correspond to an office building and a New Zealand-based telecommunications company called Devoli. Harris Decl. ¶ 24.

Because there are no known addresses for these Defendants in countries that are signatories to the Hague Convention, Google is not required to adhere to the Hague Convention to serve Defendants. *Smart Study*, 2025 WL 3672740, at *2

**II.    Article 15(3) of the Hague Convention permits alternative service for provisional relief under urgent circumstances.**

Although the Hague Convention does not apply here because Defendants' addresses are unknown despite Google's reasonable diligence, even if Google knew Defendants' addresses, Article 15(3) of the Convention would permit email and website publication service in this case. Article 15(3) states that "[n]otwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures." The "preceding paragraphs" refer to the first and second paragraphs of Article 15. Article 15(1) generally requires actual service, by a method provided for in the Convention, before the court can enter judgment. Article 15(2) specifies that a reasonable effort at service, by a method provided for in the Convention, suffices for default judgment when the defendant fails to appear.

So as the Second Circuit has explained—notwithstanding those service requirements for entering final judgment—Article 15(3) "*preserves* a judge's authority to order, in case of urgency, *any* provisional or protective measures," *Smart Study*, 2025 WL 3672740, at *2 (emphasis added), "notwithstanding" the limitations on a court's entry of default judgment, Art. 15(3), Hague Convention. And while it is true that *Smart Study* rejected "an all-encompassing 'urgency exception'" to Hague-compliant service, it was speaking in the context of a default judgment, not the quintessential provisional relief Google seeks here. 2025 WL 3672740, at *6 (noting that the plaintiff had failed to "explain how the entry of a default judgment qualifies as a 'provisional or protective measure[]'").

The "preserve[d] authority" referenced in Article 15 includes the power to order alternative methods of methods of service, like email service and website publication. *See, e.g.*, *King Spider LLC v. 884886 CH Store*, 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024) ("Article 15 of the Hague Convention allows alternative methods of service in cases or 'urgency,' when courts are

permitted 'to issue any provisional or protective measures.'" (internal quotation omitted)); *ABC*, 2024 WL 5168624, at *2 (permitting e-mail service of "TRO and its related Orders" on China-based defendants under Article 15, which "does not prevent a court from granting interim relief"); *Lonati, S.p.A. v. Soxnet, Inc.*, 2021 WL 9839476, at *3 (C.D. Cal. Sept. 20, 2021) (declining to grant default judgment under Article 15 but authorizing service "through email and facsimile because of urgency"); *see also* Fed. R. Civ. P. 4, 1993 advisory committee's note ("The Hague Convention … authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances.").

Here, Google is seeking a "provisional or protective measure"—a preliminary injunction—as opposed to the default judgment sought in *Smart Study*. *See, e.g.*, *Overnight Blowout LLC v. Shenzhen Kairuijia E-Commerce Co.*, 2025 WL 2381588, at *3 (S.D.N.Y. Aug. 13, 2025) ("Article 15 is instead better read to authorize relief such as temporary restraining orders or preliminary injunctions, which are quintessential 'provisional or protective measures.'"); *see also* Provisional, *Black's Law Dictionary* (12th ed. 2024) (defining "provisional" as "[o]f, relating to, or involving an extraordinary proceeding to protect a litigant *before final judgment*" (emphasis added)); Remedy, *Black's Law Dictionary* (12th ed. 2024) (defining "provisional remedy" as "[a] temporary remedy awarded *before judgment* and pending the action's disposition, such as a temporary restraining order, *a preliminary injunction*, a prejudgment receivership, or an attachment" (emphases added)).

Nor can it be disputed that this case is urgent. Here, Defendants are a group of elusive foreign cybercriminals who are using phishing attacks to swindle millions of victims into disclosing personal and financial information. Compl. ¶ 1. Permitting the entry of a preliminary

injunction will preserve the status quo, enabling Google to continue disruption efforts to take down domains that are being used to perpetrate these attacks.

In sum, even if the Hague Convention applied to this case, Article 15(3) would permit this Court to order alternative service to effectuate provisional relief under urgent circumstances. Nothing in *Smart Study* forecloses that authority.

### III.    Email and website publication are appropriate methods of service here.

Rule 4(f)(3) permits Google to serve the Defendants "by other means not prohibited by international agreement." *Smart Study*, 2025 WL 3672740, at *2 (noting that "[b]oth the Rule 4(f)(2) and 4(f)(3) paths are open when" the address is unknown). The proposed alternative method of service need only be "'reasonably calculated, under all the circumstances, to apprise [the defendant] of the pendency of the action.'" *Smart Study*, 2025 WL 3672740, at *2 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, Google seeks to serve all Defendants through email and website publication. *See* ECF No. 8 at 24. Those methods are reasonably calculated to apprise Defendants because "service through website publication and electronic messages is likely to be the most accurate and viable means of notice and service for these foreign cybercriminal Defendants." *Id.* (collecting cases). Although cybercriminals are highly motivated to obscure their true identities and locations, *see* Harris Decl. ¶ 14, they are equally motivated to ensure that the infrastructure on which they rely remains viable.  As a result, the email addresses they provide to registrars—for billing and other administrative issues related to the domain—are likely valid and operational. Harris Decl. ¶ 14. In any event, should Google identify a legitimate address for any Defendant, Google will attempt to serve through mail as well.

## CONCLUSION

For the above-stated reasons, *Smart Study* does not bar this Court from permitting service through email and/or website publication on Defendants.

Dated: January 23, 2026

Respectfully submitted,

*/s/ Laura Harris*

Laura Harris
**KING & SPALDING LLP**
1290 Avenue of the Americas, 14th Fl.
New York, NY 10104-0101
Tel: (212) 556-2100
Fax: (212) 556-2222
lharris@kslaw.com

Christine M. Carletta
Alexander Kazam
Paul Weeks (*pro hac vice* to be submitted)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
ccarletta@kslaw.com
akazam@kslaw.com
pweeks@kslaw.com

Sumon Dantiki (*pro hac vice* to be submitted)
**BAKER MACKENZIE LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006
Tel: (202) 452-7000
Fax: (202) 452-7074
sumon.dantiki@bakermckenzie.com

*Counsel for Plaintiff Google LLC*

## CERTIFICATE OF COMPLIANCE

I, Laura Harris, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Google LLC's Supplemental Memorandum of Law In Response to January 9, 2026 Hearing was prepared using Microsoft Word and contains 4,353 words in accordance with Local Rule 7.1(c).


DATED:     New York, New York     **KING & SPALDING LLP**
         January 23, 2026

By: */s/ Laura Harris*
     Laura Harris
     *Counsel for Google LLC*