UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOOGLE LLC,<br><br>    *Plaintiff,*<br><br>  v.<br><br>DOE 1 a/k/a YUCHENG CHANG and DOES 2–25,<br><br>    *Defendants.* | Civil Action No.: 25-cv-10440 (JSR) |

**DECLARATION OF LAURA HARRIS IN SUPPORT OF
GOOGLE'S SUPPLEMENTAL MEMORANDUM OF LAW
<u>IN RESPONSE TO JANUARY 9, 2026 HEARING</u>**

I, Laura Harris, hereby declare and state as follows:

1. I am a partner with the law firm of King & Spalding LLP and counsel of record for Plaintiff Google LLC ("Google"). I make this declaration in support of Google's Supplemental Memorandum of Law in Response to January 9, 2026 Hearing. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. As counsel for Google, I have overseen an investigation into the "Darcula" phishing scheme, perpetrated by an elusive network of cybercriminals and co-conspirators (the "Darcula Enterprise" or "Enterprise"). ECF No. 1, Complaint ("Compl.") ¶¶ 1–9. Some of the Enterprise's well-known schemes include text phishing scams mimicking messages from legitimate businesses and government entities. Compl. ¶ 4.

3. Seeking to disrupt the Enterprise's operations, Google's CyberCrime Investigation Group conducted extensive research into the Enterprise, including working to identify fraudulent website domains that were created using the Magic Cat software and the Gmail accounts used by members of the Enterprise. ECF No. 10 ("Google Decl."), ¶¶ 26–27.

4. Google also engaged NAXO Labs LLC, a company that conducts blockchain and cyber investigations, to learn more about the Enterprise, which included attempts to ascertain the identities of the phishing operation's elusive ringleaders.

5. The investigation revealed that members of the Enterprise use dedicated Telegram channels and other electronic communications, concealing their identities through usernames like "@x667788x" and "@pk520520."

6. Google believes that the Defendants may be based in China or other foreign countries.

7. The Darcula Enterprise has also been the subject of extensive reporting and investigation by other organizations. Researchers have identified one alias associated with the Darcula Enterprise—"Yucheng Chang." Google's own investigation has neither confirmed that "Yucheng Chang" is Doe Defendant 1's real name nor revealed further identifying information about that individual. But it was able to identify email addresses used by Doe Defendant 1. *See* Google Decl. ¶ 28. We have not identified a physical address associated with "Yucheng Chang."

8. On December 17, 2025, after months of investigation, Google filed this lawsuit against Doe Defendant 1 (a.k.a. "Yucheng Chang") and other Doe Defendants, seeking an *ex parte* temporary restraining order ("TRO"). ECF Nos. 1, 8. Google sought the TRO to disrupt website domains that the Enterprise has used to spoof legitimate websites in its phishing schemes. ECF Nos. 7, 8. Google provided the Court with a list of 392 domains associated with the Enterprise, Appendix A, and sought an order requesting that 15 registrars turn over mailing addresses, email addresses, and other contact information associated with those domains, ECF No. 12 ¶ 48. Google also asked this Court to permit alternative service—by website publication and email—for the Defendants under Federal Rule of Civil Procedure 4(f)(3). ECF No. 8 at 24.

9. That same day, this Court granted the TRO and ordered that the registrars "take their best efforts" to "produce to Google" the mailing addresses, email addresses, and other contact information associated with the domains. ECF No. 18 ¶ 48. The Court also found good cause for alternative service, permitting Google to serve the Defendants through email and website publication. *Id.* ¶ 17.

10. Google then sent that Order to the 15 registrars identified in Appendix A and requested that those third parties provide contact information associated with the domains identified in Appendix A by December 22, 2025. ECF No. 22 ¶ 2.

11. On January 4, after six registrars (Hostinger, Dynadot, OwnRegistrar, Wix, Newfold Digital, and Gname) returned email addresses for the domains, Google served the Defendants by email and published a website with the service documents. *Id*. ¶ 3. Seven registrars (Dominet, Hefei, LongMing, NameMart, OrangeWebsite, WDomain, WebNic[1]) refused to turn over contact information, with Hefei, Longming, Dominet, and WDomain citing Chinese law as the basis for their objection to sharing information. WebNic declined, stating that under Singapore law, it was "unable to disclose the domain information/data to you without the request of the relevant Singapore government authorities." NameMart stated that "[s]ince this is cross border investigation, please contact SG police. Or you can let the court send us the official notice with seal." OrangeWebsite also declined, stating that under Icelandic law, it was "not permitted to disclose customer or registrant information to third parties without a valid court order issued by the District Court of Reykjavik."

12. The registrars produced a total of **27** unique addresses, compiled in the attached Exhibit 1. K&S has taken extraordinary steps to determine the validity of these addresses, including conducting Internet searches, attempting to create FedEx labels to ascertain whether physical delivery to these locations is possible, and engaging local counsel to independently investigate the addresses' validity.

13. Our inquiry concluded that in nearly every case, the addresses produced by the registrars are fictional. Many lack critical information, such as street numbers, street names, or even the country where the address is purportedly located. Others are a mishmash of gibberish.

14. In my experience, this is not unusual. Defendants are engaged in conduct that violates the criminal statutes of numerous jurisdictions and, if they are ever identified, located, and

---

[1] Gname's Abuse Complaint Team responded to Google's outreach to WebNic. Although Gname ultimately produced domain owner information to Google, WebNic has not.

apprehended, may subject them to imprisonment. They have every reason to conceal their true identities and locations. Accordingly, in circumstances when they are required to provide potentially identifying information, they are likely to submit physical addresses that are entirely made up, or—in the few circumstances where the address may correspond to a real location—an address with which they have no association. These cybercriminals are equally motivated to ensure that the infrastructure on which they rely remains viable. As a result, the email addresses they provide to registrars—for billing and other administrative issues related to the domain—are likely valid and operational. ECF No. 11 ¶ 10.

15. The below paragraphs categorize the 27 addresses by country and, for each address, indicate the results of our investigation.

16. **Two** of the 27 addresses do not include the name or country code for any country. Ex. 1.

17. **Eight** addresses of the 27 addresses are purportedly located in China—specifically, Hong Kong or Beijing. Ex. 1. On their face, these addresses are not credible. Many do not have necessary street numbers or include words that are not Chinese. We attempted to create FedEx labels for these eight addresses but were unable to do so because FedEx does not recognize them.

18. Google also engaged counsel in mainland China and Hong Kong to investigate those addresses. The results of their analysis are set forth in the accompanying declarations of Ron Cai and Lam Sze Wing.

19. **One** address is purportedly in Australia, listed as: "AU South Australia asdas asdasdas dasd." Ex. 1. The street name for this address is gibberish. There is no street number. It does not have a city listed. FedEx could not create a label for this address.

20. **One** address is purportedly in Chile, listed as: "CL Copiap Atacama Av Henr quez 523, 1530349 Copiap, Atacama." Ex. 1. This address misspells the city it is purportedly located in—it is "Copiapo," not "Copiap." "Henr quez" is not a street in Copiapo. We searched for this address through Google Maps, but it did not return a location corresponding to this address. Instead, it showed a location at "Av. Henríquez," which is a street corner with multiple businesses.

21. **One** address is purportedly in Ecuador, listed as: "Address : Avda America N 34-199Edificio Anglo ecuatoriana 2 Sur City : Quito State : Pichincha Country : Ecuador, Zip: 170513." Ex. 1. Google Maps does not recognize this address. Instead, Google Maps returns an address with a different street number, street name, and zip code when searched (the mismatched parts are italicized and underlined): "América N34-19*3 y, Abelardo Moncayo*, Quito 1705*09*, Ecuador." Ecuador is not a party to the Hague Convention.[2]

22. **One** address is purportedly in Greece, listed as: "GR sasdasd asasda Beinerstrae 1065375 OestrichWinkel." Ex. 1. This street name in this address is gibberish. There is no street number. A Google search shows that "Oesterich-Winkel" is a town in Germany, not Greece. FedEx could not create a label for this address.

23. **One** address is purportedly in Japan, listed as "462-1027, Wakigawa, Kurotaki-mura Yoshino-gun, Nara, 6380202, Japan." Ex. 1. A search on Google Maps shows that the address is in Japan and that it appears to reference a region but does not correspond to a real location.

24. **Two** addresses are purportedly in New Zealand, listed as: (1) "37 Drake Street, Auckland Central, 1010" and (2) "108 Victoria Street West, Auckland, 1140." Ex. 1. A search on Google Maps shows that the first address corresponds to an office building. The listed zip code is incorrect. There is no reason to think that a member of the Enterprise is genuinely associated with

---

[2] Hague Conference on Private International Law, Status Table, ttps://tinyurl.com/36r8u479 (last visited Jan. 22, 2026).

this location. A search on Google Maps shows that the second address corresponds to a New Zealand-based telecommunications company called Devoli. There is no reason to think that a member of the Enterprise is genuinely associated with this location. New Zealand is not a party to the Hague Convention, or any other international agreement with the United States governing service.[3]

25.    **One** address is purportedly in Taiwan, listed as: "ge gegew, hthr, Nantou, Taiwan 76765." Ex. 1. The street name for this address is gibberish. There is no street number. FedEx could not create a label for this address. Taiwan is not a party to the Hague Convention.[4]

26.    **Nine** addresses are purportedly in the United States, listed below. The Hague Convention does not apply to these domestic addresses.

    a.    "1611 4th Avenue, Richmond, VA, 23222, US"

    b.    "US Florida sa la suo ta 15757 Hancock rd"

    c.    "US Michigan GARDEN CITY 31043 BROWN ST"

    d.    "US North Carolina Monroe 2501 Justin Ct"

    e.    "US Illinois TINLEY PARK 17849 67TH CT"

    f.    "US Michigan Southfield 1855 Ritter Avenue"

    g.    "US Illinois ASFS 949 Lee Avenue"

    h.    "7255 Corporate Dr, Houston, TX 77036, United States"

    i.    "Address : Address line 1 City : - State : Other Country : United States Contact No. : 1- Zip : 12345"

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

---

[3] Hague Conference on Private International Law, Status Table, ttps://tinyurl.com/36r8u479 (last visited Jan. 22, 2026).
[4] Hague Conference on Private International Law, Status Table, ttps://tinyurl.com/36r8u479 (last visited Jan. 22, 2026).

Executed on January 23, 2026, in New York, New York.

                                               */s/ Laura Harris*
                                               Laura Harris